UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION



CARMEN TRONCOSO,

    Plaintiff,

vs.

                                          Case No. 99-1299-Civ-T-17E

CAPITAL ONE SERVICES, INC.
 a Virginia corporation,                           **JURY TRIAL DEMANDED**

    Defendant.

_____/

## VERIFIED COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Carmen Troncoso, a citizen of Florida, sues Defendant Capital One Services, Inc., a Virginia corporation, demands trial by jury of all issues so triable, and alleges:

1. This is an action for damages which exceed $75,000.00, exclusive of interest and costs. This Court has jurisdiction pursuant to 28 U.S.C. § 1332 because the Plaintiff and Defendant are citizens of different states.

2. Plaintiff Carmen Troncoso is and at all material times was a citizen of the State of Florida, and was an employee of Capital One in Hillsborough County, Florida.

3. Defendant Capital One Services, Inc. ("Capital One") is and at all material times was a Virginia corporation transacting business in Hillsborough County, Florida. Specifically, Capital One operates a financial services customer relations department.

4.      The case or controversy is appropriately heard in the Tampa Division of the Middle District of Florida pursuant to Middle District Local Rule 1.02(c), as the Tampa Division encompasses the counties having the greatest nexus with the causes of action and claims of the Plaintiff. Plaintiff was employed by Defendant, which has a place of business in Hillsborough County, Florida.

5.      Plaintiff was hired by Capital One on November 4, 1996 as a customer service representative. As a customer service representative, Plaintiff answered telephone calls, and serviced accounts. Plaintiff used a computer extensively. Her performance was based on how many calls she could resolve in a specific time period. The more calls, the better her performance.

6.      By June 1997, Plaintiff developed discomfort in her wrists, which was ultimately diagnosed as carpal tunnel syndrome -- a condition in which the median nerve is compressed in the wrist due to swelling or other narrowing of the carpal tunnel.

7.      After Plaintiff reported her condition to her supervisor, Dwight Hardin, gave her a rubber ball and told her to squeeze it. She did so, but it did not alleviate the pain.

8.      Eventually, Plaintiff's carpal tunnel syndrome was accepted by Capital One as a workers' compensation accident. Some of the benefits, as required by chapter 440, Florida Statutes were provided.

9.      Plaintiff began treatment with Dr. Sandler -- a medical doctor Capital One provided to her through its workers' compensation plan.

10.     Dr. Sandler placed certain physical restrictions on Plaintiff, including that she not work on the computer for more than two hours at a time without a 30 minute respite. Capital One often refused to honor the restrictions, causing Plaintiff to choose between violating her doctor's advice and restrictions or angering her superiors.

11.     On one occasion, when Plaintiff was in the midst of her 30 minute respite, a superior named Wayne Barber intimidated her into returning to work by telling her that working an additional 15 minutes "wouldn't kill you, you know." Plaintiff, intimidated by his superiority, went back to work in violation of her doctor's restrictions.

12.     Similar requests by superiors to violate the 30 minute respite continued, and as a result, Plaintiff's carpal tunnel syndrome worsened.

13.     After a time, Mr. Barber transferred and Sharon Burr began supervising Plaintiff. When Ms. Burr learned of Plaintiff's work restrictions, Ms. Burr told Plaintiff that before Ms. Burr would honor any restrictions on Plaintiff's ability to use the computer, Plaintiff would have to bring in a note from her doctor.

14.     Plaintiff tried to explain that the restrictions were given by a workers' compensation doctor, but Ms. Burr said she did not care.

15.     After several weeks of working together, with Plaintiff missing time from work to get medical treatment for her on-the-job injury, Ms. Burr became angry with her.

16.     Ms. Burr yelled at Plaintiff that her doctor did not say that she could not work, and that her "calls per hour" were not meeting "standards." She told Plaintiff "you are nothing but a pain in my neck."

3

17. Plaintiff was afraid that she would lose her job because Ms. Burr was so angry with her that Plaintiff tried to work more and take less breaks, even though she knew it was against her doctor's advice and even though it made working very painful. Plaintiff felt that she had no choice because she was a single mother and had no other support.

18. Ms. Burr also told Plaintiff that she needed to find a different occupation or be fired.

19. Plaintiff, through proper company channels, has made numerous requests to change job positions and transfer into positions which did not require her to type. Defendant refused each, in retaliation for Plaintiff's on the job injuries and workers' compensation claims.

20. Ms. Burr also criticized and belittled Plaintiff when she took breaks ordered by her doctor or went for medical treatment.

21. Ms. Burr also placed negative comments in Plaintiff's personnel record because Plaintiff was hurt on the job.

22. In violation of section 440.13, Florida Statutes, the Defendant even refused to pay for Plaintiff's medical expenses, including her wrist splints.

23. By reason of Plaintiff's valid attempt to claim, and claiming of workers' compensation benefits, Defendant violated section 440.205, Florida Statutes, by intimidating and coercing Plaintiff, and threatening Plaintiff with discharge. The intimidation and coercion and threats were intentional, with malice and willful and wanton disregard for Plaintiff's health, safety, personal well-being and rights.

24. As a direct and proximate result of the Defendant's actions, Plaintiff's physical injuries sustained in the workers' compensation accident have been aggravated or exacerbated, resulting in increased pain and suffering and increased disability; additionally, she has suffered mental anguish, loss of capacity for the enjoyment of life, medical expenses, loss of earnings, loss of ability to earn money, and other monetary damages. The losses and expenses are permanent and continuing and Plaintiff will suffer the losses in the future.

WHEREFORE, Plaintiff Carmen Troncoso demands judgment for damages, punitive damages, costs, interest, and such other relief as this Court deems appropriate, and demands trial by jury of all issues so triable.

DATED this 2 day of June, 1999.

RYAN CHRISTOPHER RODEMS, ESQUIRE
TRIAL COUNSEL
Florida Bar No. 947652
ALPERT, BARKER & RODEMS, P.A.
Post Office Box 3270
Tampa, Florida 33602
Phone: 813/223-4131
Attorneys for Plaintiff

## VERIFICATION

I have read the factual allegations contained in the complaint, and they are truthful and accurate to the best of my knowledge and recollection, under penalty of perjury.

Signed this 26th day of May, 1999.

Carmen Troncoso

5